WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Armando Alday Salgado,
Petitioner,
v.
Unknown Party, et al.,
Respondents.

No. CV-26-04454-PHX-KML

**ORDER**

Armando Alday Salgado filed a petition for writ of habeas corpus challenging his current immigration detention. Although he is represented by counsel, Salgado did not meaningfully respond to arguments that aliens in his position are not entitled to the due process protections he seeks. Based on that failure, the petition is denied.

## I. Background

Salgado is a citizen of Mexico who "first entered the United States . . . when he was approximately 11 months old" and has lived in the United States for almost his entire life. (Doc. 1 at 6.) "Most recently, [Salgado] lawfully entered the United States on March 27, 2023, pursuant to a grant of advance parole as a recipient of Deferred Action for Childhood Arrivals ["DACA"]." (Doc. 1 at 6.) On that date, Salgado "arrived at a port of entry seeking admission" and "was granted temporary discretionary parole into the United States."[1] (Doc. 7 at 2.) For unexplained reasons, the parole was set to expire the same day Salgado was

[1] Respondents claim Salgado arrived at the port of entry on March 13, 2023. (Doc. 7 at 2.) That appears to be a typo as the underlying records consistently identify his date of entry as March 27, 2023. (Doc. 7-1 at 2, 4, 7.)

admitted. (Doc. 7-1 at 7.) Despite that, Salgado was released into the country where he continued to live for years.

In May 2026, Salgado pleaded guilty to one count of extreme driving under the influence and was sentenced to two days in jail. (Doc. 7-1 at 4.) Salgado completed that sentence and on May 23, 2026, was taken into custody by the Department of Homeland Security, where he remains. Salgado is now in removal proceedings, but he has a pending Application to Register Permanent Residence or Adjust Status and alleges he "has a viable pathway to lawful permanent residence." (Doc. 1 at 7.) On June 24, 2026, Salgado attended a bond hearing. The Immigration Judge denied bond after concluding Salgado "is ineligible for bond as he is an arriving alien." (Doc.7-1 at 14.)

On June 26, 2026, Salgado filed a petition for writ of habeas corpus. (Doc. 1.) That petition asserts three claims. First, his detention violates the Due Process Clause of the Fifth Amendment. (Doc. 1 at 14.) Second, Salgado should be deemed as detained pursuant to 8 U.S.C. § 1226(a) such that he is entitled a bond hearing. (Doc. 1 at 16.) And third, it violated the Administrative Procedure Act to deem Salgado detained pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 1 at 17.) Respondents filed a response arguing Salgado is properly detained pursuant to § 1225 and is not entitled to additional due process protections such as a bond hearing.

On Salgado's arguments regarding the statutory basis for his detention, respondents argue Salgado entered at a port of entry so he is an "arriving alien" who is "[s]ubject to mandatory detention under 8 U.S.C. § 1225(b)(1)." (Doc. 7 at 2.) Thus classified, respondents claim "the Supreme Court has held that the rights of [arriving aliens] are confined exclusively to those granted by Congress." (Doc. 7 at 3.) Respondents cite four Supreme Court opinions in support of this assertion, including *Department of Homeland Security v. Thuraissigiam,* 591 U.S. 103 (2020). Quoting portions of *Thuraissigiam*, respondents argue that case "'reiterated th[e] important rule' that a noncitizen seeking initial entry to the United States 'has no entitlement' to any legal rights, constitutional or otherwise, other than those expressly provided by statue." (Doc. 7 at 4.) Based on that

reading of *Thuraissigiam* and other authority, respondents claim Salgado "has no due process protections beyond those afforded by statute." (Doc. 7 at 5.)

Salgado's reply does not press his original position that he should be classified as detained pursuant to § 1226(a) such that he is statutorily eligible for a bond hearing. (*See* Doc. 8 at 4-6.) In fact, Salgado does not squarely dispute he is detained pursuant to § 1225(b) and appears to concede that is the statutory basis for his detention. (*See* Doc. 8 at 5.) Instead of contesting that basis, Salgado claims "under the unique facts of this case, continued detention without an individualized determination regarding danger to the community or risk of flight violates the Fifth Amendment." (Doc. 8 at 4.) Salgado believes detention of any sort—apparently regardless of the alien's classification—"must bear a reasonable relationship" to legitimate government interests "and may not be imposed arbitrarily." (Doc. 8 at 6.) Salgado does not engage with respondents' arguments regarding due process protections for arriving aliens. He does not cite a single case and most importantly, he does not explain why respondents' reading of cases such as *Thuraissigiam* is incorrect.

## II. Analysis

Salgado does not offer any meaningful argument that his classification as detained under § 1225(b) is incorrect, and the available evidence suggests it is not. Salgado presented himself at the border in March 2023 and was paroled into the United States. Section 1225(b) "is best construed as applying to aliens entering the United States at the border." *Rodriguez Vazquez v. Bostock*, --- F.4th ----, 2026 WL 2196424, at *10 (9th Cir. July 30, 2026). The statute governing parole provides parole "shall not be regarded as an admission of the alien and when purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Although there would be commonsense appeal to an argument that Salgado's prior residency in the United States and grant of DACA relief could confer Constitutional due-process protections, Supreme Court authority appears to foreclose that logic for an alien arriving

back in the United States under a grant of parole. *See Thuraissigiam*, 591 U.S. at 139 ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border.") (simplified); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 208 (1953) (holding, as to alien who lived in the United States for 25 years before leaving temporarily and then attempting to reenter through port of entry, "[f]or purposes of the immigration laws, . . . the legal incidents of an alien's entry remain unaltered whether he has been here once before or not."). Section 1225(b) therefore appears to provide the appropriate statutory basis for Salgado's detention and Salgado's two claims arguing he should be deemed detained under § 1226(a) are rejected.[2]

That leaves only Salgado's due process claim. Accepting Salgado is detained under § 1225(b), there is no dispute the statute requires he be detained. "[D]etention under both § 1225(b)(1) and (2) is mandatory and affords no opportunity for release on bond." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *7 (9th Cir. July 30, 2026); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) ("§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings"). Although § 1225(b) mandates his detention, Salgado argues it is unconstitutional based on a weighing of the competing interests required by due-process principles. Respondents argue at some length that based on his § 1225(b) classification, Salgado has "no due process protections beyond those afforded by statute." (Doc. 7 at 3-5.) Some case law supports their position. *See Thuraissigiam*, 591 U.S. at 131; *Mezei*, 345 U.S. at 212; *cf. Wong v. United States*, 373 F.3d 952, 967-68 (9th Cir. 2004) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth Amendment. We can discern no substantive liberty or property interest, however, in temporary parole status.") (simplified). Yet Salgado chose not to address those arguments (Doc. 7 at 5), a failure that is fatal to his petition.

---

[2] Importantly, Salgado's uncontested status as an arriving alien means the Ninth Circuit's recent holding in *Rodriguez Vazquez*, 2026 WL 2196424, does not apply to him.

A party may be deemed to have abandoned a claim if he fails to respond to arguments made in an opposition brief. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 881 (9th Cir. 2022), *overruled on other grounds by Arizona All. for Retired Americans v. Mayes*, No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026). "[S]tay[ing] silent on an issue raised" in an opposition brief means the plaintiff "risks abandoning its claim in the process." *Id.* at 882. In other words, failing to respond to arguments raised in an opposition brief may be viewed as "remov[ing] the issue from the case." *Id.* at 883. That is what Salgado did by not responding to the due process argument respondents advanced.

Salgado's failure to present any responsive arguments creates another fatal flaw of a slightly different type. "Federal courts adhere to the principle of party presentation." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026). Under this principle, "[t]he parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (simplified). Consistent with that principle, the court cannot manufacture arguments on Salgado's behalf. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (court cannot "manufacture arguments" for a party). And Salgado's general or opaque assertions regarding due process in his reply brief, with no citations to governing authority, are not sufficient to allow the court to reach a reasoned conclusion. *Id.* To meet his obligations under the principle of party presentation, Salgado needed to engage with the authority cited by respondents and explain why those authorities do not foreclose his due process argument. The court cannot do Salgado's work for him.

The court recognizes that even for arriving aliens, "prolonged" detention may raise substantive due process concerns. *See, e.g.*, *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional[.]"). The interplay between those cases and others concerning the due process rights of arriving aliens is not yet settled. *See Jennings*, 583 U.S. at 851 (declining to reach constitutional arguments regarding whether 8 U.S.C. § 1225(b) and other immigration statutes require periodic bond hearings); *Rodriguez Diaz*

*v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) ("[A]fter the Supreme Court's decisions in *Jennings* and [*Johnson v.*] *Arteaga-Martinez*[, 596 U.S. 573 (2022)], it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute."). But the court need not reach that question here because Salgado does not, and could not yet, raise a prolonged detention claim. *See Rodriguez Diaz*, 53 F.4th at 1204, 1207 (discussing out-of-circuit cases requiring bond hearings for aliens subject to statutory mandatory detention only when detention has become "prolonged" and suggesting six months is the bare minimum period at which detention could become prolonged).

Accordingly,

**IT IS ORDERED** the petition for writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk of Court shall enter judgment in favor of respondents and close this case.

**IT IS FURTHER ORDERED** the Motion for Status (Doc. 9) is **DENIED AS MOOT**.

Dated this 25th day of August, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**